STATE OF WEST VIRGINIA

**FILED**
April 6, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**DANNY L. WATSON,**
**Claimant Below, Petitioner**

**vs.)    No. 13-1287** (BOR Appeal No. 2048509)
(Claim No. 2012032767)

**THE HOMER LAUGHLIN CHINA COMPANY,**
**Employer Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Danny L. Watson, by Patrick K. Maroney, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. The Homer Laughlin China Company, by Lucinda Fluharty, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated November 22, 2013, in which the Board affirmed a May 29, 2013, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's May 2, 2012, decision to reject Mr. Watson's claim for workers' compensation benefits. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Watson, an employee of The Homer Laughlin China Company, alleged he was injured on April 16, 2012, when he was lifting sponge pads and a table. Mr. Watson reported to Jon Levy, M.D., for an evaluation of his injuries. Dr. Levy noted that Mr. Watson had undergone cervical fusions at C5-6 and C6-7 and lumbar fusions from the L3 level to the sacrum. Mr. Watson had a history of chronic pain and had been under the care of Mark Foster, D.O., for an extended period of time. Mr. Watson had been receiving OxyContin, Norco, Xanax, Zanaflex

and Trazodone for nearly a decade. However, Dr. Foster suddenly quit working in March of 2012, which left Mr. Watson without narcotics or pain management. Mr. Watson stated to Dr. Levy that his pain was now incapacitating. An x-ray of the cervical spine revealed plate fixation at C5-6 with apparent fusion at C6-7 as well. An x-ray of the lumbar spine showed advanced degenerative changes with pedicle screw instrumentation from L3 to S1. An x-ray of both knees revealed mild degenerative changes with normal alignment and joint space. Dr. Levy diagnosed Mr. Watson with chronic pain syndrome. Dr. Levy noted that it was difficult for him to distinguish between the pain related to the new injury and the fact that he was no longer taking narcotics for his chronic pain. However, based upon Mr. Watson's statements that all of his prior surgeries had been covered under workers' compensation, Dr. Levy concluded that Mr. Watson's symptoms were work related. Dr. Levy diagnosed cervical spondylosis, lumbar spondylosis, and post laminectomy syndrome of the lumbar spine. The claims administrator denied Mr. Watson's application asserting he had failed to show how his diagnosis was related to his April 16, 2012, injury. Mr. Watson protested. Mr. Watson had an independent medical examination performed by Victoria Langa, M.D. Dr. Langa opined that the pain suffered by Mr. Watson was not a result of any injury but was a result of his cessation of OxyContin.

The Office of Judges affirmed the claims administrator's decision to reject the claim. The Office of Judges noted that Mr. Watson has had long term chronic back problems that has required several surgeries. The Office of Judges also noted that Mr. Watson had been seeing Dr. Foster who had prescribed him OxyContin for the past decade. The Office of Judges noted that Dr. Foster retired in March of 2012, Mr. Watson allegedly injured himself of April 16, 2012, and Mr. Watson was seen with obvious symptoms of narcotic withdrawal on April 20, 2012. The Office of Judges noted that Dr. Levy opined that it would be difficult to determine whether Mr. Watson's complaints were caused by the injury that allegedly occurred on April 16, 2011, or by his cessation of OxyContin. The Office of Judges concluded that Dr. Levy's report does not causally connect Mr. Watson's symptoms to a specific injury. He simply opined that, since all of Mr. Watson's other injuries were compensable, then this one should be as well. The Office of Judges then turned to the independent medical examination conducted by Dr. Langa. Dr. Langa opined that the pain suffered by Mr. Watson was not a result of any injury but was a result of his cessation of OxyContin. Next the Office of Judges noted that the symptoms complained of before and after the injury were the same, indicating that no new injury had occurred. Finally the Office of Judges noted that Mr. Watson's own testimony shows that he was in severe pain before the alleged April 16, 2012, injury. As a result, the Office of Judges determined that Mr. Watson failed to establish he was injured in the course of and as a result of his employment. The Board of Review adopted the findings of the Office of Judges and affirmed its conclusions.

The findings of the Office of Judges and conclusions of the Board of Review should be affirmed. The only inference that would lead to the conclusion that Mr. Watson suffered a compensable injury is the report of Dr. Levy. In Dr. Levy's report, he opines that it is difficult to tell whether Mr. Watson's complaints of pain were a result of any injury or caused by his cessation of narcotic medications. Dr. Langa opined that the new symptomatology was caused by his cessation of pain medication and not any new injury. The evidence of record supports Dr. Langa's interpretation. The evidence in the record indicates that Mr. Watson was no longer able

to procure a prescription to OxyContin in early April and he started suffering withdrawal symptoms followed by excruciating pain, which tends to show that no injury occurred.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  April 6, 2015**

**CONCURRED IN BY:**
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**
Chief Justice Margaret L. Workman